UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HILARY GOODFRIEND, KATHRYN HUMMEL and SCOTT FORMAN, individually, and on behalf of others similarly situated, | Civil Action No. **CLASS ACTION COMPLAINT** JURY TRIAL DEMAND |
| Plaintiffs, | |
| vs. | |
| FORD MOTOR COMPANY, | |
| Defendants. | |

Plaintiffs Hilary Goodfriend, Kathryn Hummel and Scott Forman ("Plaintiffs") on behalf of themselves and all others similarly situated, by the undersigned counsel, allege, against Defendant, Ford Motor Company ("Ford" or "Defendant") the following based upon counsel's investigation of various publicly available sources::

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs individually and on behalf of all current and former Ford vehicle owners and lessees of model years 2017-2019 (the "Class Vehicles") that were marketed and sold with overstated fuel economy and who reside in New York, Florida, and New Jersey.

2.      Ford announced on February 21, 2019 its fuel economy testing procedures that it performs in order to receive official Environmental Protection Agency ("EPA") fuel economy ratings were not accurate and as a result the Class Vehicles' fuel economy had been overstated.

3.      These fuel economy ratings, resulting from mandated tests outlined and specified in federal law, exist to help foster realistic metrics so that consumers can compare them

with vehicles of other manufacturers. These metrics are one of the most important factors in a new-car buyers' purchase decisions.

4.     The EPA fuel economy ratings, which Defendant represented as accurate on each of its Class Vehicle's federally mandated windows stickers and in its various advertising statements regarding such vehicles, materially overstated the Class Vehicles' real mileage per gallon ("MPG") and fuel economy which required accurate testing pursuant to federal mandate would otherwise have produced.

5.     Plaintiffs each leased a car with stated EPA fuel economy ratings and advertised fuel efficiency ratings that were inaccurate and appeared more favorable than such ratings would have been had Ford followed proper test procedures.

6.     Thus, Defendant conducted inadequate and inaccurate EPA fuel economy testing on Class Vehicle models. These shortcomings resulted in vehicles whose actual miles-per-gallon EPA fuel economy ratings, that compliant federal testing results would have shown, were materially different and less favorable to consumers than the false fuel economy ratings Defendant represented as accurate on each Class Vehicle's window sticker and in other advertising. Ford has now admitted that its testing methods were incorrect and produced artificially high fuel economy ratings. These misstatements are material because the EPA numbers provide a necessary tool for vehicle comparison for consumers when evaluating vehicles to lease or purchase.

7.     Ford represented to customers the Class Vehicles had achieved specific MPG fuel economy estimates.  Fuel economy of an automobile relates distance traveled by a vehicle to the amount of fuel consumed. This is typically expressed in terms of gallons of gasoline

consumed to distance traveled in miles.1  MPG is calculated by dividing the number of miles traveled by the amount of gasoline consumed to travel such miles (miles driven ÷ gallons used = mpg).

8.      The EPA testing methods are required by federal law, but Ford's testing methods were flawed and insufficient as shown in greater detail below. Thus, Ford's methods produced inaccurate fuel economy ratings that did not comply with federal regulations.

9.       Ford knows that consumers are concerned with fuel economy and rising fuel prices, and markets its inflated fuel economy claims to entice consumers to buy or lease Ford vehicles instead of those of its competitors.

10.     Ford knew or should have known facts indicating the inaccuracies in the advertised MPG of the Class Vehicles. Defendant consciously or recklessly disregarded facts that indicated that Ford's fuel economy ratings were misstated and overstated. Ford's failure to correct its false advertised MPG estimates, and concomitant failure to disclose the defects in its fuel economy testing, constitutes actionable misrepresentations, unfair, unlawful, fraudulent, and deceptive business practices in violation of the consumer protection laws of New York, New Jersey and Florida, and a breach of Ford's express and implied warranties.

11.     This action seeks relief for the injuries sustained as the result of the inaccurate testing methods used by Ford to ascertain the fuel economy ratings of their vehicles and the resulting material misstatements of fuel economy, as well as implicitly the accuracy of such ratings, used in the marketing and sales of the Class Vehicles.

12.     Plaintiffs and the Classes have been damaged by Ford's misrepresentations, concealment, and non-disclosure of the MPG metrics, because they were misled into leasing or

---

1 https://en.wikipedia.org/wiki/Fuel_economy_in_automobiles (last accessed June 25, 2019).

purchasing Class Vehicles which were vehicles of a quality different than they were promised, and thus paying higher fuel costs they would not otherwise have paid.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class (as defined below) are citizens of states different from Defendant. This Court has jurisdiction over supplemental state law claims pursuant to 20 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs are United States citizens and submit to the Court's jurisdiction. This Court has personal jurisdiction over Ford, because it conducted and continues to conduct substantial business in the District and because it has committed the acts and omissions complained of herein in the District, including the marketing, sale and leasing of the Class Vehicles in this District.

15.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a) and (c) because Ford has sufficient contacts with this District and sells its vehicles to consumers including Plaintiffs, through numerous dealers in the District so as to subject it to personal jurisdiction in in the District, and a substantial part of the events and omissions giving rise to the claims asserted in this Complaint occurred within this District.  In addition, Plaintiff Hilary Goodfriend resides in this District.

## THE PARTIES

16.     Plaintiffs, and class members, all have purchased or leased a Ford model with inflated fuel economy claims.

17.     Plaintiff Hillary Goodfriend ("Goodfriend") a citizen of the State of New York residing in Jericho, New York, leased a 2017 Ford Escape on August 8, 2016 at Hempstead L-M Motors Corp. dealership in Hempstead, New York.   The 2017 Ford Escape window sticker specifically stated that the Class Vehicle's fuel economy MPG was: 23 city; 30 highway and 26 combined city/hwy.  Plaintiff has never received fuel economy in her Ford Class Vehicle even close to these advertised numbers. Plaintiff has experienced real world fuel economy below the ratings claimed by the Defendant.  Had the Plaintiff known the truth about her vehicle she would not have made the choice to lease it.

18.     Plaintiff Katie Hummel ("Hummel") a citizen of the State of Florida residing in Boca Raton, Florida, leased a 2018 Ford Fusion SE on October 1, 2018 at Sawgrass Ford dealership in Sunrise, Florida.  The 2018 Ford Fusion SE window sticker specifically stated that the Class Vehicle's fuel economy MPG was: 23 city; 34 highway; and 27 combined city/hwy. Plaintiff has never received fuel economy even close to these advertised numbers in her Ford Class Vehicle.  Plaintiff has experienced real world fuel economy below the ratings claimed by the Defendant.  Had Plaintiff Hummel known the truth about her vehicle's fuel economy, she would not have made the choice to lease this it.

19.     Plaintiff Scott Forman ("Forman") a citizen of the State of New Jersey residing in Monroe Township, New Jersey, leased a 2018 Ford Explorer XLT in May 2018 at Haldeman Ford dealership in Hamilton Township, New Jersey.  The 2018 Ford Explorer XLT window sticker specifically stated that the Class Vehicle's fuel economy MPG was: 16 city; 22 highway; and 19 combined city/hwy,  Plaintiff has never received fuel economy even close to these advertised numbers in his Ford Class Vehicle. Plaintiff has experienced real world fuel economy

below the ratings claimed by the Defendant.  Had Plaintiff known the truth about his vehicle's fuel economy, he would not have made the choice to lease it.

20.     Defendant Ford is a Delaware corporation, with its principal place of business and national headquarters located in Dearborn, Michigan. Ford Class Vehicles are advertised, distributed and sold at multiple places of business in the states through a network of Ford dealers, among other places.  Defendant engages in continuous and substantial business in New York, New Jersey and Florida.

21.     Defendant and its subsidiaries, affiliates, and other related entities, and its respective employees were the agents, servants and employees of Defendant, and each was acting within the purpose and scope of that agency and employment.

22.     Whenever reference is made to any act by Defendant or its subsidiaries, affiliates, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed that act or transaction for Defendant while engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

23.     Since the mid-1970s, window stickers containing vehicle MPG estimates have been displayed on vehicles pursuant to the Energy Policy and Conservation Act.  The EPA is responsible for providing the fuel economy data that appears on the window sticker.  The EPA/DOT Fuel Economy and Environment window sticker contains MPG estimates that are based on standardized laboratory test procedures to ensure that the MPG estimates are "reliable, repeatable, and fair across different car models."[2]  This allows the consumer to accurately

---

[2] https://nepis.epa.gov/Exe/ZyPDF.cgi/P100IENB.PDF?Dockey=P100IENB.PDF (last accessed June 25, 2019).

compare the fuel efficiency among various vehicles. Periodically, the EPA updates its methodology to determine fuel economy to reflect the modernization of vehicles and improving vehicle testing.[3]

24.     In 2017 the EPA updated some of the calculations that manufacturers use to determine EPA fuel economy to better reflect newer more fuel-efficient vehicles.[4]

25.     Manufacturers are responsible for testing their own vehicles with the EPA's standardized laboratory test procedures and then required to report the results to the EPA.[5] Manufacturers are not required to test every vehicle but only "one representative vehicle— typically a preproduction prototype—for each combination of loaded vehicle weight class, transmission class, and basic engine."[6]

26.     In fact, the EPA only reviews and confirms the results of about 15%-20% of the vehicles with their own testing,[7] leaving the majority of vehicle fuel economy testing and reporting to the honor system of the manufacturers.

27.     Manufacturers estimate MPG with controlled laboratory tests where the vehicles drive wheels are placed on a dynamometer ("Dyno") that simulates the driving environment.[8] The car is run through standardized driving routines on the Dyno.  The settings of the Dyno take place in two stages where first, actual on-road operation must be characterized and then a

---

[3] https://www.epa.gov/fueleconomy/history-fuel-economy-labeling (last accessed June 25, 2019).
[4] https://www.epa.gov/fueleconomy/basic-information-fuel-economy-labeling (last accessed June 25, 2019).
[5] https://www.fueleconomy.gov/feg/how_tested.shtml (last accessed June 25, 2019).
[6] https://www.fueleconomy.gov/feg/which_tested.shtml (last accessed June 25, 2019).
[7] https://www.fueleconomy.gov/feg/how_tested.shtml (last accessed June 25, 2019).
[8] *Id.*

measurement called "road load" is used which simulates friction, aerodynamic drag, and tire-related losses.[9]

28.     An EPA guidance letter to car manufacturers, dated February 23, 2015, the purpose of which was to clarify the procedures used in establishing road-load force and dynamometer settings, stated that:

> The method a manufacturer elects to use to characterize the road-load force is optional; however, the manufacturer is responsible for the accuracy of the road-load force specification and dynamometer settings. It is also the manufacturer's responsibility to insure that the vehicles it produces conform to the road-load specification reported in the application for certification and used for certification and fuel economy testing.[10]

29.     Ford has consistently promoted the fuel economy of its vehicles.  In fact, Ford boasted the 2019 Ford Ranger's fuel efficiency with an EPA-estimated fuel economy rating of 21 mpg in the city, 26 on the highway and 23 combined for its two-wheel drive truck. [11] Ford's four-wheel drive Rangers rated 20 mpg city, 24 highway and 22 mpg combined. [12] "This is best-in-class EPA-estimated city fuel economy rating of any gasoline-powered four-wheel-drive midsize pickup," Ford has stated.[13]   Ford also promoted its vehicles' fuel economy on its website.  In fact, on Ford.com, Ford touts the fuel economy of the 2019 Ranger stating it's the "BEST-IN-CLASS EPA-ESTIMATED GAS MPG."[14]   On Ford.com today, Ford advertises that

---

[9] https://www.consumerreports.org/fuel-economy-efficiency/ford-emissions-under-criminal-investigation/ (last accessed June 25, 2019).
[10] https://iaspub.epa.gov/otaqpub/display_file.jsp?docid=34102&flag=1 (last accessed June 25, 2019).
[11] https://www.freep.com/story/money/cars/2018/12/11/ford-ranger-fuel-economy-midsize-trucks/22671 (last accessed June 25, 2019).
[12] *Id.*
[13] *Id.*
[14] https://www.ford.com/trucks/ranger/features/?searchid=1686695161|68389309809|402087311489|&ef_id=CjwKCAjw3azoBRAXEiwA-_64Oj8QnJCk1LlnS37RY-sps-eRj9IRnpfhumx1PWuRyfFojqJUeVN9oBoCv88QAvD_BwE:G:s&s_kwcid=AL!2519!3!336803889107!e!!g!!2019%20ford%20ranger%20fuel%20economy (last accessed June 25, 2019).

the 2019 Ford Ranger is "THE MOST FUEL EFFICIENT GAS-POWERED MIDSIZE PICKUP IN AMERICA."[15]

30.     These fuel economy ratings also appeared on the window sticker of the vehicles where consumers use them to compare material vehicle qualities to help make informed choices about the cars they purchase or lease.

31.     Ford is aware of the importance of fuel economy to consumers and that consumers rely on car manufacturers' advertising campaigns and gas mileage claims when making decisions in their vehicle purchases.

32.     On February 21, 2019, the same day of the filing of Ford's Form 10-K for its fiscal year ending December 31, 2018, Ford issued a press release stating that "In September, a handful of employees raised a concern through our Speak Up employee reporting channel regarding the analytical modeling that is part of our U.S. fuel economy and emissions compliance process."  The release further stated that Ford had hired an outside firm to investigate the vehicle road load specifications used in Ford's testing of emission and fuel economy and that they would be "evaluating potential changes to our road-load modeling process, including engineering, technical and governance components."

33.     On the same day, in response to Ford's announcement, the EPA said that information from Ford's investigation is "too incomplete for EPA to reach any conclusions. We take the potential issues seriously and are following up with the company to fully understand the circumstances behind this disclosure."[16]

34.     Ford is no stranger to fuel economy error, having previously faced problems relating to errors in fuel economy claims.  "In 2013 Ford overstated the fuel economy for its C-

---

[15] https://www.ford.com/trucks/ranger/ (last accessed June 25, 2019).
[16] https://ca.reuters.com/article/businessNews/idCAKCN1QA2U0-OCABS (last accessed June 25, 2019).

Max hybrid model by seven miles per gallon and in 2014 lowered fuel economy ratings for six other models and offered compensation to customers." [17]

35.     Ford has engaged in willful conduct intending that consumers rely on its advertised MPG estimates by attempting to mask the actual MPG estimates.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3) individually and as a class action on behalf of the following proposed classes:

> **National Class**: **All persons in the United State who purchased or leased a Class Vehicle (the "Nationwide Class").**
>
> **New York Class**: **All persons who purchased or leased a Class Vehicle in the state of New York (the "New York Class").**
>
> **Florida Class**: **All persons who purchased or leased a Class Vehicle in the State of Florida (the "Florida Class").**
>
> **New Jersey Class:** **All persons who purchased or leased a Class Vehicle in the State of New Jersey (the "New Jersey Class").**

37.     Together the New York Class, Florida Class, and New Jersey Class shall be collectively referred to herein as the "State Classes."  Excluded from the Classes are Defendant, its parents, subsidiaries and affiliates, directors and officers, and members of their immediate families, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change, or expand the Nationwide Class and the State Class definitions if discovery and/or further investigation reveals that they should be expanded or otherwise modified.

38.     Plaintiffs reserve the right to establish subclasses where appropriate.

---

[17] https://www.reuters.com/article/us-autos-ford-emissions/u-s-opens-criminal-probe-into-ford-emissions-certification-idUSKCN1S21BD (last accessed June 25, 2019).

39.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable.   Although the precise number of such persons is unknown, and the facts are presently within the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe hundreds of thousands of Class Vehicles have been sold and leased throughout the United States and well as by members of the State Classes.

40.     **Commonality and Predominance**: There are questions of law or fact common to the Classes that predominate over any questions affecting individual members.   Those questions include but are not limited to the following:

a.  whether Ford engaged in conduct alleged herein;

b.  whether Ford designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c.  whether Ford designed, manufactured, marketed, distributed, leased, sold or otherwise placed Class Vehicles into the stream of commerce in the United States when it knew, or should have known, that the fuel-economy ratings of the Class Vehicles were false;

d.  whether Ford knowingly failed to disclose that the fuel-economy ratings of the Class Vehicles were false;

e.  whether the Defendant's conduct violated New York's General Business Law §§ 349 and 350;

f.  whether the Defendant's conduct violated Florida's Deceptive and Unfair Trade Practices Act;

g.  whether the Defendant's conduct violated New Jersey's Consumer Fraud Act;

h.  whether, Plaintiffs and members of the Classes have suffered ascertainable loss of moneys and/or property and/or value as a result of Defendant's omissions and/or misrepresentations of material facts related to the Class Vehicles' fuel economy;

i.  whether Plaintiffs and members of the Classes are entitled to monetary damages and/or other remedies, and if so the nature of any such relief;

j.  whether Ford was unjustly enriched at the expense of the Classes; and

k.  whether Plaintiffs and the other members of the Classes are entitled to equitable relief or other injunctive relief and, if so, in what amount.

41.     **Typicality**: Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs each leased or purchased a Class Vehicle with a false fuel economy rating, as did each member of the Classes.  Furthermore, Plaintiffs and all members of the Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

42.     **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel experienced in pursuing complex class action litigation and they intend to prosecute this action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

43.     **Superiority**: Class action treatment is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the

Classes can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims and registration records.

44.     Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

45.     Without a class action, Defendant will likely retain the benefit of their wrongdoing and will continue a course of action which will result in further damages to Plaintiffs and the members of the Classes.

## TOLLING OF STATUTES OF LIMITATION

46.     Any applicable statutes of limitations have been tolled by Ford's knowing and active concealment, denial, and misleading actions, as alleged herein. Plaintiffs and members of the Classes defined above were kept ignorant of critical information required for the prosecution of their claims, without any fault or lack of diligence on their part. Plaintiffs and members of the Classes could not have reasonably discovered that the fuel economy ratings were not accurate until Ford had disclosed this information which was shortly before this class action litigation was commenced.

47.     Ford is under a continuous duty to disclose to Plaintiffs and members of the Classes the true character, quality and nature of the Class Vehicles, and to disclose the truth regarding the fuel economy ratings.  Ford knowingly, affirmatively and actively concealed the true fuel economy ratings of the Class Vehicles. Plaintiffs and members of the Classes reasonably relied upon Ford's knowing, affirmative and active concealment.  Based on the foregoing, Ford is estopped from relying on any statutes of limitation as a defense in this action.

48.     Plaintiffs and members of the Classes could not have known that the Class Vehicles were marketed, sold and leased with false fuel economy ratings, as a result of Ford's

fraudulent concealment of the true MPG and EPA fuel economy ratings of the Class Vehicles. Plaintiffs and members of the Classes did not discover, and could not have discovered, through the exercise of reasonable diligence, the true nature of the fuel economy of the Class Vehicles.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
**(On Behalf of the Nationwide Class Pursuant to 15 U.S.C. §2310(d)(1)(A))**

49.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

50.     This claim is brought as a state law claim under 15 U.S.C. §2310(d)(1)(A) and is before this Court as a supplemental state court claim for each of the state subclasses pursuant to diversity jurisdiction under CAFA.

51.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a) and (d).

52.     Plaintiffs bring this Count individually and on behalf of all Class Members.

53.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § (4)-(5).

54.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

55.     Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

56.     15 U.S.C. § 2310(d) (1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

57.     As described above, Defendant expressly warranted in advertisements that the Class Vehicles experienced fuel economy efficiency. These written warranties fall within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

58.     Under 15 U.S.C. § 2301(7), Defendant created implied warranties for the Class Vehicles.

59.     With respect to Class members' purchases or leases of the Class Vehicles, the terms of Ford's express and implied warranties became part of the basis of the bargain between the parties.

60.     Ford breached these warranties as described in more detail above.  Without limitation, the Class Vehicles experience less MPG than represented by Ford.

61.     Plaintiffs and members of the Classes are in privity with Defendant in that they purchased or leased the Class Vehicles from Defendant or its agents.

62.     It is unnecessary and futile to afford Ford a reasonable opportunity to cure their breach of written warranties.  Ford knew or should have known of the misrepresentations concerning the Class Vehicles' fuel economy ratings at the time of sale or lease of each Class Vehicle, but failed to rectify the misrepresentations. Consequently, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs or Class members resort to an informal dispute resolution procedure and/or afford Ford a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

63.     As a direct and proximate result of Ford's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiffs and the members of the proposed Classes have sustained damages in an amount to be determined at trial.

64.     All jurisdictional prerequisites have been satisfied.

65.     Plaintiffs, individually and on behalf of the Nationwide Class, seek all damages permitted by law, including diminution in the value of their vehicles, in an amount to be proven at trial.

**COUNT II**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 & 350**
**DECEPTIVE ACTS AND PRACTICES**
**(On Behalf of the New York Class)**

66.     Plaintiff Goodfriend hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.  Defendant's practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiff Goodfriend and the New York Class members to purchase and/or lease the above-mentioned Class Vehicles with false fuel economy ratings.

67.     Defendant who sold and/or leased the Class Vehicles knowingly concealed that the advertised fuel economy ratings were not accurate and were in fact, materially overstated.

68.     Defendant's practices, acts, policies and course of conduct are actionable in that:

(a)     Defendant actively and knowingly misrepresented to Plaintiff and the New York Class members at the time of purchase or lease false fuel economy ratings of the Class Vehicles;

(b)     Defendant failed to give adequate warnings and notices regarding the false fuel economy ratings of the Class Vehicles to consumers who purchased or leased said vehicles, despite the fact that Defendant possessed prior knowledge of the true fuel economy ratings;

(c)     Defendant failed to disclose to Plaintiff Goodfriend and the New York Class members the true fuel economy ratings of the Class Vehicles, and/or actively concealed the fact from them.

(d)     Defendant caused Plaintiff and the New York Class members to purchase or lease the Class Vehicles based on false fuel economy ratings despite the fact Defendant had prior knowledge of the accurate fuel economy ratings at the time of placing said vehicles into the stream of commerce.

69.     Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true fuel economy ratings for the Class Vehicles.

70.     In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached their duty not to do so.

71.     Members of the public were deceived by Defendant's affirmative misrepresentations and failures to disclose.

72.     Such acts by Defendant are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle.  Said deceptive acts and practices aforementioned are material.  The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law § 349 and 350.

73.     Defendant's wrongful conduct caused Plaintiff Goodfriend and the New York Class members to suffer an ascertainable loss by causing them to incur substantial expense on gas above what they would have incurred if they had chosen to purchase or lease a vehicle that had a lower fuel economy rating.  In addition to direct monetary losses, Plaintiff Goodfriend and the New York Class members have suffered an ascertainable loss by receiving less than what was promised.

74.     A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff Goodfriend and the New York Class members.  Had the accurate fuel economy ratings of the Class Vehicles been disclosed, consumers would not have purchased or leased them, would have paid less for the Class Vehicles had they decided to purchase or lease them.

75.     Since Defendant's willful and knowing conduct caused injury to Plaintiff, Plaintiff seeks recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Ford's deceptive conduct; and any other just and proper relief available under N.Y. GEN. BUS. LAW § 349.

**COUNT III**
**VIOLATIONS OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**(On Behalf of the Florida Class)**

76.     Plaintiff Hummel hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.  Plaintiff Hummel asserts this cause of action on behalf of herself and the Florida Class.

77.     Sections 501.201 et. seq. are commonly known as the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

78.     Plaintiff and the putative class are "Consumers" and "Interested Part[ies] or Person[s]" as defined by Fla. Stat. § 501.203(6) & (7) (the "Florida Class").

79.     Defendant is engaged in "Trade or Commerce" as defined in Fla. Stat. §501.203(8).

80.     In connection with the sale and/or lease of the Class Vehicles, Defendant committed unfair and/or deceptive acts and practices in violation of the FDUTPA.

81.     Plaintiff Hummel and members of the Florida Class are consumers who purchased and/or leased Class Vehicles for personal, family or household use.

82.     Defendant engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the FDUTPA.  Specifically, Defendant was aware that the Class Vehicle's fuel economy rating that Defendant determined was false, but failed to disclose this to Plaintiff Hummel and the Florida Class.  These affirmative misrepresentations were material to the vehicle purchases and leases, and were false statements of fact.

83.     Defendant also engaged in unlawful conduct in violation of the FDUTPA by making knowing and intentional omissions.  Defendant knowingly failed to disclose accurate fuel economy ratings of the Class Vehicles in order to secure the sale or lease of these vehicles, and to offer them at a premium price.

84.     Defendant did not fully and truthfully disclose to its customers accurate fuel economy ratings, which was not readily discoverable until well after the purchase and/or lease.  As a result, Plaintiff Hummel and the other Florida Class members were fraudulently induced to lease and/or purchase the Class Vehicles based on false and inflated fuel economy rating.  These facts that Defendant concealed were solely within its possession.  Defendant intended that

Plaintiff Hummel and all Florida Class members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles.

85.     Defendant's wrongful conduct caused Plaintiff Hummel and the Florida Class to suffer an ascertainable loss by causing them to incur substantial expense on gas above what they would have incurred if they had chosen to purchase or lease a vehicle that had a lower fuel economy rating.  In addition to direct monetary losses, Plaintiff Hummel and the Florida Class have suffered an ascertainable loss by receiving less than what was promised. A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff Hummel and the Florida Class.  Had the accurate fuel economy ratings of the Class Vehicles been disclosed, consumers would not have purchased or leased them, would have paid less for the Class Vehicles had they decided to purchase or lease them.

**COUNT IV**
**VIOLATION OF THE OF NEW JERSEY CONSUMER FRAUD ACT, N.J. STAT. ANN.**
**§ 56:8-1, *ET SEQ.***
**("NJCFA")**
**(On Behalf of the New Jersey Class)**

86.     Plaintiff Forman hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.  Plaintiff Forman asserts this cause of action on behalf of himself and the New Jersey Class.

87.     The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . ."  N.J.S.A. 56:8-2.

88.     Plaintiff Forman and members of the New Jersey Class are consumers within the meaning of NJCFA who purchased and/or leased Class Vehicles for personal, family or household use.

89.     Defendant engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the NJCFA.  Specifically, Defendant was aware that the Class Vehicle's reported fuel economy ratings were false, but failed to disclose this to Plaintiff Forman and the New Jersey Class.  These affirmative misrepresentations were material to the vehicle purchases, and were false statements of fact.

90.     Defendant also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions.  Because the determination to conceal the true fuel economy ratings from Class Vehicle owners at the time of sale and thereafter was made solely by Defendant, it is currently unknown which employees of Defendant made such decisions or exactly when they were made.  However, upon information and belief, Plaintiff became aware of the true fuel economy ratings when Defendant first disclosed this information a few months ago.

91.     Defendant knowingly failed to disclose that the fuel economy ratings for the Class Vehicles were false.  Defendant knowingly failed to disclose this to consumers in order to secure the sale or lease of the Class Vehicles, and to offer them at a premium price.

92.     Defendant did not fully and truthfully disclose to its customers the truth related to the Class Vehicles fuel economy ratings, which was not readily discoverable until well after the purchase and/or lease.  As a result, Plaintiff Forman and the other New Jersey Class members were fraudulently induced to lease and/or purchase the Class Vehicles based on the marketing and advertising of false fuel economy ratings.  These facts that Defendant concealed were solely

within its possession.  Defendant intended that Plaintiff Forman and the New Jersey Class rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles.

93.     Defendant's wrongful conduct caused the New Jersey Plaintiff Forman and the New Jersey Class to suffer an ascertainable loss by causing them to incur substantial expense on gas above what they would have incurred if they had chosen to purchase or lease a vehicle that had a lower fuel economy rating.  In addition to direct monetary losses, Plaintiff Forman and the New Jersey Class have suffered an ascertainable loss by receiving less than what was promised. Had the accurate fuel economy ratings of the Class Vehicles been disclosed, consumers would not have purchased or leased them, would have paid less for the Class Vehicles had they decided to purchase or lease them.

94.     A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff Forman and the New Jersey Class.  Had the accurate fuel economy ratings of the Class Vehicles been disclosed, consumers would not have purchased or leased them, would have paid less for the Class Vehicles had they decided to purchase or lease them.

## COUNT V
## BREACH OF EXPRESS WARRANTY
**(On behalf of the Nationwide Class or, Alternatively, each of the State Classes)**

95.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

96.     Defendant at all times was a merchant with respect to motor vehicles.

97.     In selling their vehicles, Defendant expressly warranted in advertisements, including in the stickers affixed to the windows of their vehicles, that their vehicles experienced a favorable fuel economy of specific MPGs, depending on the vehicle.

98.     These affirmations and promises were part of the basis of the bargain between the parties.

99.     Defendant breached these express warranties arising from their advertisements, including window stickers, because the fuel economy ratings for their vehicles are inaccurate.

100.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and members of the Classes have been damaged in an amount to be determined at trial.

**COUNT VI**
**COMMON LAW FRAUD**
**(On behalf of the Nationwide Class or, Alternatively, each of the State Classes)**

101.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.  Defendant made material misrepresentations and omissions concerning a presently existing or past fact.  For example, Defendant did not fully and truthfully disclose to its customers accurate fuel economy ratings of the Class Vehicles.  As a result, Plaintiffs and the Class members were fraudulently induced to lease and/or purchase the Class Vehicles based on false fuel economy ratings.

102.     These omissions and statements were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely on them.

103.     Defendant affirmatively misrepresented and concealed material facts concerning the fuel economy of the Class Vehicles.

104.     Defendant had a duty to disclose the true fuel economy based on their superior knowledge and affirmative misrepresentations to the contrary.

105.     Defendant affirmatively misrepresented and/or actively concealed material facts, in whole or in part, intending to induce Plaintiffs and members of the Classes to purchase their vehicles and at a higher price than they otherwise would have.

106.     Plaintiffs and the members of the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

107.     Ford made the omissions and concealment of material facts discussed above with knowledge of the effect of concealing these material facts.  Ford knew that by misleading consumers, Ford would sell or lease more Class Vehicles.

108.     Plaintiffs and Class members justifiably relied upon Ford's knowing, affirmative and active concealment.   By concealing material information about the Class Vehicles' fuel economy ratings, Ford intended to induce Plaintiffs and Class members of the Classes into purchasing or leasing the Class Vehicles.

109.      As a direct and proximate result of Ford's omissions and active concealment of material facts, Plaintiffs and Class members have been damaged in an amount according to proof at trial.

### COUNT VII
### UNJUST ENRICHMENT
**(On behalf of the Nationwide Class or, Alternatively, each of the State Classes)**

110.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.  Defendant distributed the Class Vehicles into the stream of commerce with the knowledge that these vehicles would be purchased or leased by consumers based on a reasonable expectation that its representations related to fuel economy ratings were accurate.

111.     Defendant distributed the Class Vehicles with the knowledge that the fuel economy ratings were false which made the Class Vehicles worth less than the price being paid for them.

112.     Because of its wrongful acts and omissions, Defendant charged a higher price for their vehicles than the vehicles' true value and Defendant obtained monies which rightfully belong to Plaintiffs.

113.     Defendant received an economic benefit at the expense of the consumers of the Class Vehicles.

114.     In the circumstances, principles of equity and good conscience make it unjust for Defendant to retain the benefit conferred on it by consumers of the Class Vehicles and Defendant should be required to pay for this benefit.

**COUNT VIII**
**BREACH OF CONTRACT**
**(On behalf of the Nationwide Class or, Alternatively, each of the State Classes)**

115.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

116.     Defendant has expressly and unambiguously sold the Class Vehicles claiming false and inflated fuel economy ratings as more fully set forth herein.  Plaintiffs and the Class Members purchased the Class Vehicles which constitute valid contracts with the Defendant.

117.     The fuel economy ratings of the Class Vehicles as claimed in Defendant's marketing and advertising, constitute terms or representations which form the basis of the contract for the Plaintiffs and the other Class Members with the Defendant.

118.     The Defendant failed to perform as required by the contracts and breached the contracts by delivering the Class Vehicles with markedly less fuel economy than advertised.

119.     As a result of the foregoing, Plaintiffs and the Class Members are entitled to compensatory damages, plus interest, costs and such additional relief as the Court may deem appropriate or to which Plaintiffs and the Class may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class members, respectfully requests that this Court grant the following relief:

A.     Allow this action to proceed as a class action under Rule 23 for all claims alleged, designate Plaintiffs as the representatives of the class and the undersigned counsel as counsel for the class;

B.     Enter judgment against Defendant in favor of Plaintiffs and each member of the Classes, in the amount of actual and compensatory damages, and pre-and post-judgment interest as allowed by law and enjoin Defendant from future violations;

C.     Award all actual, general, special, incidental, statutory, treble, punitive, and consequential damages to which Plaintiffs and members of the Classes are entitled;

D.     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to notify all Class Members about the inaccurate fuel economy ratings of the Class Vehicles and provide correct fuel economy ratings;

E.     Award Plaintiffs and the Class Members attorney's fees and costs incurred in this litigation; and

F.     Grant Plaintiffs such further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, by counsel, hereby demand a trial by jury on all claims and issues so triable.

Dated:  June 28, 2019

By: *Melissa Emert*

Melissa Emert, Esq. (ME 5203)
Howard T. Longman, Esq. (HTL 2489)
**STULL, STULL & BRODY**
6 East 45th Street, Suite 500
New York, New York 10017
Tel:     (212) 687-7230

Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel:     (845) 356-2570

*Attorneys for Plaintiffs and the Putative
Class*

27